IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHELLE MURRAY BEAKY, et al.,       :       CIVIL ACTION
                              :
            v.                          :
                              :
COUNTY OF BUCKS, et al.            :       NO. 08-1251

**M E M O R A N D U M   A N D   O R D E R**

Ditter, J.                                              August 3, 2009

This case comes before me on motions to dismiss the complaint. It arises out of the

failure of a decedent's relatives to be told of his death before he was cremated. The defendants

include the hospital where he was originally taken; the county coroner, his deputies, and his

office; the county where he died; the funeral home, which temporarily housed the decedent's

body, and its president; and the crematory, which disposed of the body, and its president. For the

reasons that follow, I will grant all the motions to dismiss and allow the plaintiffs to amend their

complaint.[1]

I.      <u>BACKGROUND</u>

The complaint alleges Harry Murray was playing pool on December 6, 2006, when he

suffered a sudden cardiac arrest. He was transported to Warminster Hospital where he was

pronounced dead within minutes of his arrival. Less than two hours later, John McGhee, the

deputy coroner of Bucks County, viewed Murray's body and issued a coroner's report and the

body was placed in the hospital morgue. Employees of the hospital attempted to contact next-of-

---

[1] Losing a parent can be one of the most difficult and emotional times in a person's life. I acknowledge the sensitive nature of this case: two daughters lost their father and his body was cremated before they had an opportunity to mourn and make burial decisions. This was especially difficult for these daughters as they had had no contact with their father for more than two years. That said, I am constrained by the bounds of the law in dismissing this case.

kin but were unable to locate them and the body remained unclaimed.  On December 15, 2006,

McGhee signed Murray's death certificate and authorized the removal of Murray's body from the

hospital morgue.  The body was transported to Huff & Lakjer Funeral Home that same day.

McGhee and Richard Kuntz, the first deputy coroner, also attempted to contact next-of-kin but

were unable to locate them.  Within a thirteen-day period, the coroner officials reviewed

Murray's hospital records, spoke with Murray's girlfriend, contacted the office of Murray's

physician, located old addresses, and attempted to contact possible relatives in several states.  On

December 19, 2006, unable to locate any next-of-kin and with Murray's body unclaimed, Kuntz

issued a permit authorizing cremation and the body was cremated that same day.  Murray's

daughters, the plaintiffs Michelle Beaky and Constance D'Abruzzo, were not notified prior to the

cremation and did not learn of Murray's death until April 2007.  (Compl. ¶¶ 22-59.)

　　　　The plaintiffs filed a complaint against Tenet Healthsystem Bucks County, LLC, d/b/a

Warminster Hospital; the county coroner, Joseph Campell, and his deputies, Kuntz and McGhee;

the Office of the Coroner, Bucks County; the County of Bucks; Huff & Lakjer Funeral Home,

Inc. and its president, Philip Lakjer; and Landsdale Crematory and its president, Lena Lakjer.

The plaintiffs make federal claims under 42 U.S.C. § 1983 and several other claims under

Pennsylvania law.  The hospital, the county, and the coroner's office and its officials have each

filed motions to dismiss the complaint pursuant to Rule 12(b)(6); the coroner's office and its

officials also argue that the state law claims should be dismissed under Rule 12(b)(1) for lack of

subject-matter jurisdiction.  At issue here are the plaintiffs claims against those defendants.[2]

─────────────

[2] Neither Huff & Lakjer Funeral Home, Inc., Philip Lakjer, Landsdale Crematory, nor Lena Lakjer has filed a motion to dismiss in this case and therefore I do not address the sufficiency of the claims against those parties.

II.    JURISDICTION

     This court has original jurisdiction over the plaintiffs' § 1983 claims pursuant to 28

U.S.C. § 1331.  Because I am dismissing all the § 1983 claims against the hospital, the county,

and the coroner's office and its officials, I will decline to exercise supplemental jurisdiction over

the plaintiffs' state law claims against those defendants.  28 U.S.C. § 1367(c)(3).

III.    STANDARD OF REVIEW

     Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon

which relief can be granted.  I must accept as true the factual allegations contained in the

complaint and all reasonable inferences drawn therefrom and view the facts in the light most

favorable to the plaintiff.  A valid complaint requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8

does not demand "'detailed factual allegations,' . . . . 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.*; *see also*

*Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("This 'does not impose a

probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of' the necessary element.").  *Iqbal*

clarified that the Court's decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), which

required a heightened degree of fact pleading in an anti-trust case, "expounded the standard for

'all civil actions.'" 129 S. Ct. at 1953.

IV.   DISCUSSION

    A.   Preliminary Issues

        1.   Whether the Claims Were Timely Filed

The officials in the coroner's office, Campbell, Kuntz, and McGhee, incorrectly argue that both the plaintiffs' federal and state law claims are subject to the six-month limitations period governing actions against government officials, 42 Pa. Cons. Stat. § 5522(b) (2009).  In § 1983 claims, federal courts must apply the state's limitations period for personal injury, *Wilson v. Garcia*, 471 U.S. 261, 276-78 (1985), which under Pennsylvania statute, 42 Pa. Cons. Stat. § 5524 (2009), is two years.  Section 5522(b) is a residual limitations period with limiting language that makes it inapplicable to claims subject to other limitations periods.  *Salanek v. State Trooper Eric Olena*, 558 F. Supp. 370, 371 (E.D. Pa. 1983).  Here, I find that the plaintiffs' state law claims constitute "an action to recover damages for injuries to the person . . . caused by the wrongful act . . . of another" within the meaning of § 5524(2), which has a two-year limitations period, and thus, the residual period of § 5522(b) is not applicable.[3]  The instant complaint was filed in March 2008 and Murray was cremated less than two years earlier in December 2006; therefore, both the federal and state claims were timely filed.

---

[3] The defendants' reliance on *Stoppie v. Johns,* 720 A.2d 808, 809 (Pa. Commw. Ct. 1998), is inapposite because *Stoppie* addresses the choice between § 5522(b) and § 5524(7), which also has limiting language that makes it inapplicable to claims subject to other limitations periods.  *Id.* at 809 ("The only issue in this case is . . . [whether] the six month statute of limitations contained in§ 5522(b) [is] applicable or is the two-year statute of limitations set forth in § 5524(7) applicable.")  Here, the plaintiffs' state law claims are subject to § 5524(2), which has no limiting language.

2.      Whether Any Defendants Have Governmental Immunity under the Pennsylvania Political Subdivision Tort Claims Act

At this time, I decline to address any issues related to the defense of governmental immunity under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. §§ 8541-8542 (2009).  Although the county briefly referenced its applicability during oral arguments, no defendants have asserted the immunity defense under the PSTCA in their motions to dismiss or submitted briefs regarding how it applies to the alleged facts in this case. The defendants' failure to raise the defense and my decision not to address it should not be construed to mean that the defendants have waived their right to this defense.

3.      Whether the "Office of the Coroner, Buck County" is a Suable Legal Entity

A decision as to whether the "Office of the Coroner, Bucks County" is an entity subject to legal process would be premature because there are unresolved questions relevant to the analysis, including, *inter alia*, those regarding the nature of the relationship between the state, the county, and the coroner's office as it operates within Pennsylvania.  For the purposes of this order, I treat the county and the coroner's office as one and the same.

B.      Count I – Section 1983 Procedural Due Process Claim Against the County and the Coroner's Office and Its Officials

In Count I, the plaintiffs allege that the county and the coroner's office and its officials violated the plaintiffs' procedural due process rights under § 1983 because, as next-of-kin, they had a constitutionally-protected property interest in Murray's body and none of the defendants provided them notice or an opportunity to be heard prior to his cremation.  This count is properly construed as two separate claims:  one claim against the coroner officials in their personal

capacities; and another claim against the county and the coroner's office for their inadequate policies or customs under *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978).[4]

   1.  Personal Capacities Claim

  Count I as against the coroner officials in their personal capacities must be dismissed on the basis of qualified immunity.  Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Although the two-step inquiry for determining qualified immunity set forth in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), "is often appropriate, it should no longer be regarded as mandatory."  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  A court may follow *Saucier* by determining (1) first whether the alleged actions of the official violated a constitutional right; and if so, (2) whether a reasonable official would have known that his actions violated a "clearly established" right.  *Saucier*, 533 U.S. at 201.  However, I have the discretion to proceed directly to the second inquiry and determine whether the right at issue was clearly established.  *Pearson*, 129 S. Ct. at 820-21.

  The Third Circuit has adopted a broad view of what constitutes an established right of which a reasonable official would have known.  *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004).  "[T]here does not have to be 'precise factual correspondence' between the case at issue and a previous case in order for a right to be 'clearly established.'"  *Id.*  Rather, in determining whether

---

[4] The complaint names both the government entity and its officials as defendants and alleges facts that suggest both personal and official capacity claims.  The officials correctly note that claims against government officials in their official capacity are to be treated as claims against the government entity.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  For an official-capacity claim the government entity's policies or customs must have played a part in the violation of a federal right; a personal-capacity claim seeks to impose individual liability upon government officials for actions taken under color of law that violated the federal right.  *Id.*

the right was clearly established so that a reasonable official would have known of its existence, the crucial question is whether the law gave the official "fair warning" that his alleged actions were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). This inquiry is a matter of federal law; it is irrelevant whether the alleged actions violate state law. *Davis v. Scherer*, 468, U.S. 183 (1984).

Prior to this incident, federal law did not provide any guidance with respect to the type of notification process required of a coroner before disposing of an unclaimed dead body. Nor was there any guidance in the cases as to how long a coroner should wait until disposing an unclaimed body when there is a complete dearth of knowledge about next-of-kin. The plaintiffs appear to rely solely on a Sixth Circuit case, *Brotherton v. Cleveland*, 923 F.2d 477 (6th Cir. 1991), for their procedural due process claim.[5] In *Brotherton*, a coroner's office removed a decedent's corneas without the next-of-kin's consent and without inspecting any medical records. *Id.* at 478. Although *Brotherton* acknowledges that some sort of due process must be afforded to next-of-kin, the court explicitly did not make a determination regarding "the type or extent of predeprivation process" that is required of the coroner. *Id.* Similarly, the Ninth Circuit in *Newman v. Sathyavaglswaran*, 287 F.3d 786 (9th Cir. 2002), also involving the non-consensual removal of corneas, found a constitutionally-protected property interest in a decedent's body, but the court noted that it was not addressing "[t]he scope of the process of law that was due the parents." *Id.* at 799. The non-existence of any binding precedent in this circuit, the lack of any

---

[5] The plaintiffs have not squarely addressed the issue of whether the alleged actions of officials within the coroner's office violated a "clearly established" right. The plaintiffs have cited no cases in the Third Circuit that establish a constitutionally-protected property interest in a decedent's body, no cases in this circuit that specify the type or extent of process due if such an interest were deprived, and no cases whatsoever that address whether the cremation of an unclaimed body is even a constitutional deprivation. Instead, the plaintiffs rely on this Sixth Circuit case that is both factually and legally distinguishable.

discussion of the appropriate type and extent of due process in the most analogous appellate

rulings, and the absence of any of our district court opinions addressing the issue undermines any

claim by the plaintiffs that the right was clearly established.

I explicitly make no finding that any constitutional rights were implicated by the facts

alleged in this case, but if there were such rights, they were not clearly established.  I conclude

that the officials in the coroner's office would have reasonably believed that their efforts to find

Murray's next-of-kin and their disposal of his body were sufficient.  In other words, I find the law

did not provide the officials with fair warning of the contours of any constitutional duty to

provide actual notice to these plaintiffs prior to Murray's cremation.  Because the law did not

provide the officials with fair warning that their alleged actions violated any constitutional rights,

they are entitled to qualified immunity.

Even if a constitutional analysis was required, the plaintiffs fail to state a procedural due

process claim because the officials in the coroner's office performed an adequate search.[6]  The

complaint states that, over a thirteen-day period, the officials were engaged in a multi-faceted,

but ultimately unsuccessful, effort to locate Murray's next-of-kin.  Specifically, the officials

reviewed Murray's hospital records, which provided the name of Murray's physician and listed

his live-in girlfriend as the emergency contact; spoke with Murray's girlfriend, who provided no

---

[6] Whether the defendants employed adequate procedural safeguards is determined by balancing the importance of the right to the individual, the risk of erroneous deprivation, and the government's interest, including administrative efficiency.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Here, the plaintiffs' limited interest in making burial decisions, which is labeled only a quasi-property right in Pennsylvania, *see Whitson v. City of Philadelphia*, No. 07-2832, 2008 U.S. Dist. LEXIS 87443, *16 (E.D. Pa. Oct. 27, 2008) ("[M]ultiple [state] trial courts in Pennsylvania have recognized that next-of-kin have special 'quasi property' rights in a decedent's remains arising out of their duty to bury the dead."), coupled with the government's interests in preventing overcrowding in its county morgues and ensuring timely, sanitary disposal of unclaimed bodies makes it clear that not much process is due the plaintiffs.  Given that important government interests necessitate timely disposal, the risk of erroneous deprivation of the plaintiffs' interest is a factor that also weighs in favor of the defendants.  The plaintiffs also claim that they were deprived their interest in mourning their father's death; however, that interest was not deprived by cremation, since the plaintiffs could mourn even in the absence of their father's body.

names or addresses for any known relatives; contacted the office of Murray's physician, which had no information on next-of-kin; located old addresses for Murray in Pennsylvania and Maryland in order to find associated relatives; and attempted to contact possible relatives in Pennsylvania and North Carolina – all, unfortunately, to no avail.  Still, the plaintiffs contend that the officials should have found them – not knowing the plaintiffs existed, not knowing where to look for them, and despite their having different names than the decedent.  Even one of Murray's own daughters had been unsuccessful in her efforts to find him for two years.  (Compl. ¶ 47.)

Furthermore, the complaint fails to specify how the officials could have located any of the family members.  It implies, but is careful not to allege, that the names of Murray's parents were available from Social Security records and that the parents of this 61-year-old decedent would have been the source of other associated names.  (Compl. ¶¶ 44, 59.)  It implies, but again is careful not to allege, that Murray's employer information would have yielded the names of the plaintiffs.  (Compl. ¶ 46.)  The complaint states that there were four "identifiable" family members:  the decedent's sister, Barbara O'Connell, and his daughters, Michele Beaky and Constance D'Abruzzo.[7]  It then alleges that these family members could have been found through "public records" but does not identify which public records would have provided such information.  (Compl. ¶ 58.)  In short, the plaintiffs complain that they were never identified, but fail to allege how they were identifiable.  Based on these allegations, I find it unlikely that the officials would have been able to locate the plaintiffs, no matter how diligent the search.  A valid claim cannot be founded on the basis of implication and innuendo alone.

---

[7] One plus two equals four?

2.      *Monell* Claim

Count I as against the county and the coroner's office for their inadequate policies or customs regarding the notification of next-of-kin and disposal of dead bodies must also be dismissed.  Although a municipality may not be sued under § 1983 solely on a respondeat superior theory, it may held liable under § 1983 for its own established policies or customs which violate the Constitution.  *Monell v. Dep't of Soc. Svcs*., 436 U.S. 658, 694 (1978) ("When execution of the government's policy or custom, whether by its lawmakers or by those edicts or acts may fairly be said to represent official policy, inflicts the injury[,] . . . the government as an entity is responsible . . . under § 1983).  It matters not that Pennsylvania provides a post-deprivation remedy, as the county and the coroner's office suggest, because the existence of a post-deprivation remedy does not defeat a § 1983 claim where, as here, the deprivation complained of results from the operation of established state procedures.  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-436 (1982).

However, the plaintiffs have failed to allege facts to support a finding that the policies or customs of the county or the coroner's office were responsible for inflicting injuries upon them.  The plaintiffs provide only conclusory allegations that the policies and customs were inadequate and describe no specific policies or customs that were followed by the coroner officials.   Even if I were to construe the facts to show that the policies and customs were inadequate, I would have to find that the officials did not follow them because, as described above, I have concluded that the complaint describes an adequate search.  The alleged facts show that it was not any policies or customs that injured the plaintiffs, but rather the unfortunate fact that the plaintiffs were not identifiable.  Even more, the plaintiffs have specifically alleged that the officials "failed to follow

those procedures, policies, customs, and practices which existed" thus causing the plaintiffs'

failure to receive notice and an opportunity to be heard prior to the cremation of Murray's body.

(Compl. ¶ 73.)  Obviously, if the officials ignored the policies and customs, whatever their

unspecified deficiencies may have been, those shortcomings, however inadequate, had nothing to

do with this case.  Thus, the motions to dismiss filed by the county and the coroner's office and

its officials must be granted.

   C.      Count II – Section 1983 Substantive Due Process Claim Against the County and
            the Coroner's Office

        In Count II, the plaintiffs allege that the county and the coroner's office violated their

substantive due process rights under § 1983.  This claim must also be dismissed.  As a threshold

matter, a plaintiff alleging a substantive due process violation must establish the existence of a

property right protected by the substantive due process doctrine.  *Nicholas v. Pa. State Univ.*, 227

F.3d 133, 139-40 (3d Cir. 2000).  "[N]ot all property interests worthy of procedural due process

protection are protected by the concept of substantive due process."  *Id*. at 140.  Substantive due

process protects only those property rights that are "fundamental" under the Constitution.  *Id*.

Courts should generally be reluctant to expand the concept of substantive due process, since

"guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."

*Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

        Here, the plaintiffs argue that their interest in Murray's dead body establishes the basis for

a property right protected by substantive due process.[8]  I find that such a property interest,

_____

        [8] The plaintiffs' reference to *Brotherton v. Cleveland*, 923 F.2d 477 (6th Cir. 1991), is not relevant to their
substantive due process claim because *Brotherton* addresses property rights only in the context of procedural due
process.  The plaintiffs also rely on *Martin v. Kim*, No. 03-536, 2005 U.S. Dist. LEXIS 20595 (N.D. Ind. Sep. 19,
2005), but the substantive due process discussion in *Martin* is limited to whether the alleged actions of the
defendants "shock the conscience" and does not address the key issue for our purposes:  whether the plaintiff's
interest in a relative's dead body is "fundamental."  *Id*. at *17-19.  The plaintiffs offer no argument for finding that

although recognized as a quasi-property right by lower state courts in Pennsylvania, is not

fundamental and does not provide sufficient grounds for a substantive due process violation.[9]

The Third Circuit has limited the protections of substantive due process to certain real property

cases, and I decline to expand it into unchartered areas.  *See Nicholas*, 227 F.3d at 141-42

(stating that the Third Circuit has "so far limited non-legislative substantive due process review

to cases involving real property ownership," such as zoning decisions and building permits).  The

plaintiffs have failed to plead a substantive due process claim, and therefore Count II against the

county and the coroner's office must be dismissed.

      D.     <u>Count III  – Section 1983 Procedural Due Process Claim Against the Hospital, the
Crematory and its President, and the Funeral Home and its President</u>

Count III is a procedural due process claim against the hospital, the crematory and its

president, and the funeral home and its president.  In its motion, the hospital argues that this

claim should be dismissed against it because the hospital is not a state actor and it did not

conspire with any state officials.[10]  I agree.

It is well established that in order to state a claim under § 1983, a plaintiff must allege

that the defendant was acting "under color of state law" with respect to the allegedly

unconstitutional deprivation.  *See, e.g., Cohen v. City of Philadelphia*, 736 F.2d 81, 84 (3d Cir.

1984).  In cases under § 1983, "under color of state law" is treated the same as the "state action"

requirement under the Fourteenth Amendment.  *Lugar v. Edmonson Oil Co.* 457 U.S. 922, 928

such an interest is fundamental.

    [9] Under Pennsylvania law, the plaintiffs appear to have a quasi-property right in their father's remains arising out of the next-of-kin's duty to bury the dead.  *See Whitson v. City of Philadelphia*, No. 07-2832, 2008 U.S. Dist. LEXIS 87443, *16 (E.D. Pa. Oct. 27, 2008) (citing a series lower state court decisions).  However, whether a certain property interest is protected by substantive due process is not determined by reference to state law.  *Nicholas*, 227 F.3d at 140.

    [10] Only the hospital filed a motion to dismiss this claim.

-12-

(1992).  To allege that a defendant is a state actor, a plaintiff must first show that the deprivation

was "caused by the exercise of some right or privilege created by the State or by a rule of conduct

imposed by the State or by a person for whom the State is responsible," and second, that the

defendant's conduct is fairly attributable to the state "because he is a state official, because he

has acted together with or has obtained significant aid from state officials, or because his conduct

is otherwise chargeable to the state."  *Id.* at 937.

There is no heightened pleading requirement for § 1983 claims.  *Leatherman v. Tarrant

County Narcotics*, 507 U.S. 163, 167-68 (1993).  "The fact that the pleading standard is less

exacting now does not, however, excuse plaintiff's failure to plead facts sufficient to allege a

critical element of his § 1983 cause of action."  *Collins v. Christie*, No. 06-4702, 2007 U.S. Dist.

LEXIS 61579, at *11 (E.D. Pa. Aug. 22, 2007).

It appears on the face of the complaint that Tenet HealthSystem Bucks County, LLC,

doing business as Warminster Hospital is a private provider of medical services.  The plaintiffs

do not allege that the hospital or any of its employees were state officials or officers of any

government agency or unit.  The plaintiffs merely allege that the hospital "took possession of

[Murray's] body and assisted in the handling and disposing of his body" and that the hospital, in

doing so, acted "under color of state law."  (Comp. ¶ 85.)  Pennsylvania law requires a hospital to

-13-

release an unclaimed body to the coroner,[11] but the allegation, as phrased, means only that the hospital complied with state law – a far cry from alleging that the hospital was a state actor.[12]

In the alternative, the plaintiffs allege that the hospital engaged in a civil conspiracy with state actors.  The Third Circuit has held that "a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983."  *Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998) (following *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).  A civil conspiracy renders conspirators liable for the foreseeable actions of coconspirators taken in furtherance of the conspiracy.  *Taxin v. Food Fair Stores, Inc.*, 287 F.2d 448, 451 (3d Cir. 1960).

The plaintiffs fail to plead facts sufficient to show that the hospital and state officials engaged in a conspiracy to deprive the plaintiffs of a constitutional right.  The plaintiffs assert, with no factual allegations, that the hospital was "acting in concert" with officials from the coroner's office (Compl. ¶ 86) and made an agreement with officials to deprive the plaintiffs of their rights involving Murray's body (Compl. ¶ 92).  These labels and conclusions are inadequate to establish that the hospital was acting under color of state law.

---

[11] Pennsylvania's Coroner's Act, 16 Pa. Cons. Stat. § 1233 (2009), states:

Whenever the body of any deceased person who is unidentified or which body is unclaimed by proper persons has been found within the county, it shall be removed to the county morgue or to a private morgue serving in lieu thereof.  The coroner shall, if he deems it necessary, cause any such body to be properly embalmed or prepared for preservation for such a length of time as he may think proper.

[12] The plaintiffs do not address the "state action" issue in their briefs, other than arguing that the hospital might be a state actor depending on facts developed in discovery and citing a Sixth Circuit case that has little to no bearing on the facts of this case.  *See Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1268 (6th Cir. 1990) (finding no facts to support that a hospital was a state actor and remanding to the district court).  Indeed, the plaintiffs state that their "principal contention" is that the hospital is a private actor which conspired with state officials.

-14-

Even if an agreement between the hospital and officials from the coroner's office can be construed from the complaint, that agreement as alleged by the plaintiffs is merely to push responsibility onto the coroner's office for the costs of notifying the next-of-kin and caring for Murray's body (Compl. ¶ 89) and not to deprive the next-of-kin of their procedural due process rights.[13]   There is no factual allegation that the hospital was directly involved in cremating Murray's body, that the hospital had any influence over the policies followed by officials in the coroner's office, or that the hospital asserted any pressure on the coroner's office to authorize cremation prior to notifying the plaintiffs.   Nor do the plaintiffs allege that the hospital knew or should have known that officials within the coroner's office would violate the plaintiff's rights. Other than the plaintiffs' bald assertions, the complaint merely alleges that the hospital performed a limited search for next-of-kin (Compl. ¶ 32) and then acquiesced to the release of Murray's body from its morgue (Compl. ¶ 37-38), which was required under Pennsylvania law. In short, the complaint contains no factual allegations regarding dealings between the hospital and officials from the coroner's office that could even be interpreted liberally to be conspiratorial.   Therefore, the hospital's motion to dismiss Count III must be granted.

---

[13] Not only do the factual allegations fail to support an express agreement, but the complaint also fails to allege facts supporting that the hospital and officials from the coroner's office shared a common objective or even the same motives.  *See Maslow v. Evans*, No. 01-3636, 2003 U.S. Dist. LEXIS 20316, at *85 (E.D. Pa. Nov. 7, 2003) ("An express agreement among all conspirators is not a necessary element of civil conspiracy as long as the participants in the conspiracy share a general objective or the same motives for desiring the intended conspiratorial result.").  The plaintiffs assert that the hospital's motivation for entering the conspiracy was to push responsibility onto the coroner's office, while also asserting that the motivation of the coroner's office was to avoid any such responsibility for Murray's body.  (Compl. ¶ 89.)  Such incongruent allegations do not suggest an implicit agreement and do not raise a reasonable expectation that discovery will reveal evidence of a civil conspiracy.  It is also counter-intuitive to believe that the coroner's office would try to avoid responsibility for the care of an unclaimed body by deliberately failing to contact relatives who could claim and take responsibility for disposal of the body.

E.       Count IV – Section 1983 Substantive Due Process Claim Against the Hospital, the
         Crematory and its President, and the Funeral Home and its President

Count IV is a substantive due process claim against the hospital, the crematory and its

president, and the funeral home and its president.  As set forth above, the plaintiffs have failed to

plead a substantive due process claim, and therefore the hospital's motion to dismiss Count IV

must be granted.[14]

F.       Counts V through IX – State Law Claims Against All Defendants

As I said above, I will decline to exercise supplemental jurisdiction over the plaintiffs'

state law claims against the hospital, the county, and the coroner's office and its officials.

However, even if I was to exercise jurisdiction over these claims, I would have to dismiss them

because the plaintiffs fail to state any claims under Pennsylvania law.

1.       Count V – Section 868 of the Restatement of Torts Claim Against the
         Officials in the Coroner's Office, the Hospital, the Crematory and its
         President, and the Funeral Home and its President

In Count V, the plaintiffs allege that the hospital, the officials in the coroner's office, the

crematory and its president, and the funeral home and its president are liable under the

Restatement of Torts § 868 (1939).  The plaintiffs fail to allege facts sufficient to support a claim

against the hospital or the coroner officials under this theory.

The Pennsylvania Supreme Court recognizes a cause of action in tort against "[a] person

who wantonly mistreats the body of a dead person or who without privilege intentionally

removes, withholds or operates upon the dead body."  *Papieves v. Kelly*, 437 Pa. 373, 376-379

(Pa. 1970) (noting the rule of recovery set forth in the Restatement of Torts § 868 (1939)).  This

tort has been narrowly interpreted to protect "the right of a decedent's nearest relatives. . . against

---

[14] Again, only the hospital has filed a motion to dismiss this claim.

-16-

intentional, outrageous or wanton conduct that is peculiarly calculated to cause them serious mental or emotional distress." *Id.* at 378; *see also Hackett v. United Airlines*, 528 A.2d 971, 974 (Pa. Super. Ct. 1987) (noting that *Papieves* "expressly limits [§ 868 claims] to infliction of distress through intentional, outrageous or wanton behavior calculated to bring about such distress").

None of the hospital's alleged conduct can be construed as intentional, outrageous, or wanton and particularly calculated to cause the plaintiffs emotional distress.  Although the plaintiffs allege in Count V that the hospital and other defendants "intentionally and recklessly withheld [Murray's] body from [them] by . . . (a) failing to undertake a reasonable search to identify, locate and contact [Murray's] next of kin, and (b) causing the cremation of [Murray's] body . . . , and (c) turning over [Murray's] remains" (Compl. ¶ 118), this is at variance with the factual assertions clearly stating that the hospital did not participate in the cremation of the body or the release of Murray's remains.  Other than the plaintiffs' bald assertions, the complaint alleges only that the hospital performed a limited search for next-of-kin and then allowed the release of Murray's body from the morgue as required by state law.

The plaintiffs argue that the hospital incurred obligations under three Pennsylvania statutes: the Funeral Director Law, 63 Pa. Cons. Stat. §§ 479.1-480.11 (2009); the Disposition of Dead Human Bodies Act, 35 Pa. Cons. Stat. §§ 1091-1123 (2009); and the Uniform Anatomical Gift Act, 20 Pa. Cons. Stat. §§ 8601-8642 (2009).  However, not one of these statutes states that a hospital has any duty to search for or notify the next-of-kin of a person who dies at its facility or whose body is delivered to its facility.  To the extent that any of the allegations can be read to allege wanton mistreatment, withholding, or removal of Murray's body, the hospital's actions

were privileged under Pennsylvania law in light of the Coroner's Act, which requires hospitals to release unclaimed bodies to the coroner.  16 Pa. Cons. Stat. § 1233 (2009).

Likewise, none of the alleged conduct by the officials within the coroner's office can be construed as intentional, outrageous, or wanton behavior calculated to bring about the plaintiff's emotional distress.  The plaintiffs cannot create such conduct out of facts which do not even amount to negligence.  The officials may have intentionally approved the cremation of the body knowing that next-of-kin were not yet notified, but as I describe above, the officials performed an adequate search.  The officials did not know the plaintiffs existed, did not know where to look for them, and because they had different last names, were unlikely to find them.  Nonetheless, the officials performed an investigation spanning thirteen days and involving Murray's hospital records, his girlfriend, his physician, and possible relatives.  This conduct amounted to a diligent search for next-of-kin and not conduct that was particularly calculated to cause emotional distress.

       2.      Count VI – Intentional Infliction of Emotional Distress Claim Against the Officials in the Coroner's Office, the Hospital, the Crematory and its President, and the Funeral Home and its President

Count VI is a state law claim for intentional infliction of emotional distress against the officials in the coroner's office, the hospital, the crematory and its president, and the funeral home and its president.  The plaintiffs have elected not to pursue this claim and do not oppose dismissal of this count.

3.      Count VII – Civil Conspiracy Claim Against the Officials in the Coroner's Office, the Hospital, the Crematory and its President, and the Funeral Home and its President

In Count VII, the plaintiffs allege that the officials in the coroner's office, the hospital, the crematory and its president, and the funeral home and its president were engaged in a civil conspiracy under state law.  The hospital and the coroner officials argue that the complaint fails to establish such a claim.  I agree.  As with the §1983 civil conspiracy claim in Count III, the plaintiffs' state claim contains bald assertions, lacks any factual allegations of an express or tacit agreement among the hospital and the coroner officials, and fails to establish that those defendants acted in combination with each other.  While each of their actions may have contributed to the cremation of Murray's body prior to notification of next-of-kin, the complaint contains no set of facts that show a connection between those separate actions, other than conclusory allegations that a conspiracy existed.

4.      Count VIII – Governmental Negligence Claim Against the County and the Coroner's Office

Count VIII is described as a "Governmental Negligence" claim against the county and the coroner's office.  This claim fails to allege facts to support a cause of action under Pennsylvania law.  The plaintiffs allege in Count VIII that the county and the coroner's office "negligently and recklessly maintained and disposed of [Murray's] body" (Compl. ¶ 139), that the handling of Murray's remains constituted negligent care, custody or control of personal property, and that as a result, the plaintiffs suffered emotional injuries.  The plaintiffs fail to state a claim because Pennsylvania does not recognize a cause action for emotional injuries where interference with a dead body is negligent or reckless.  *See Whitson v. City of Philadelphia*, No. 07-2832, 2008 U.S.

-19-

Dist. LEXIS 87443, *10-15 (E.D. Pa. Oct. 27, 2008) (concluding that Pennsylvania does not recognize a claim for negligent mistreatment of a dead body); *Papieves v. Kelly*, 437 Pa. 373, 376-379 (Pa. 1970) (recognizing a claim for intentional or wanton mistreatment of a dead body under the Restatement of Torts § 868 (1939), which does not allow recovery under a theory of negligence); *Hackett v. United Airlines*, 528 A.2d 971, 974 (Pa. Super. Ct. 1987) (declining to recognize a claim for negligent or reckless mistreatment of a corpse under Restatement (Second) of Torts § 868 (1977)).

5.      Count IX – Negligence Against the Hospital

The hospital asks me to dismiss the negligence claim against it in Count IX in its proposed order, but does not specifically address this count in its brief.  Nonetheless, the plaintiffs fail to state a claim because, as set forth above, Pennsylvania does not recognize a cause action for emotional injuries where interference with a dead body is negligent or reckless.[15]

## V.      CONCLUSION

In sum, all federal claims against the hospital, the county, and the coroner's office and its officials must be dismissed under Rule 12(b)(6), and I will decline to exercise supplemental jurisdiction over any state law claims against those defendants.  All the claims will be dismissed without prejudice and the plaintiffs will have the opportunity to amend their complaint

Counsel are reminded of their obligation under Rule 11(b) to perform a reasonable inquiry and present factual contentions which either have evidentiary support or are specifically identified to likely have evidentiary support after further investigation and discovery.

---

[15] The plaintiffs also make a claim for property loss relating to the cremation of their father's body in this count.  While plaintiffs may claim emotional injuries for the loss of such "quasi-property" in certain situations, *see, e.g., Papieves v. Kelly*, 437 Pa. 373, 376-379 (Pa. 1970), I decline to make a finding that a dead body by itself has any compensable value for which next-of-kin may claim a property loss.

Furthermore, "tolerance of factual contentions in initial pleadings by the plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances."  Fed. R. Civ. P. 11, 1993 Advisory Committee Notes.